**Judy Renee SCALES, As Next Friend of Charles Lewis Scales, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 81–1367.

United States Court of Appeals, Fifth Circuit.

Sept. 13, 1982.

Rehearing and Rehearing En Banc Denied Oct. 19, 1982.

Edward C. Prado, U. S. Atty., San Antonio, Tex., Eloise E. Davies, Barbara B. Price, Robert S. Greenspan, Attys., Civ. Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Gibbins & Wash, Bill Zook, Bob Gibbins, Yii-Chwen (Francis) Pan, L. Tonnett Byrd, Austin, Tex., for plaintiff-appellee.

Before THORNBERRY, JOHNSON and GARWOOD, Circuit Judges.

THORNBERRY, Circuit Judge:

Charles Lewis Scales, an infant, sued the United States through his mother, Judy Renee Scales, as next friend under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680, alleging that he was born with congenital rubella syndrome as a result of the negligent medical treatment his mother received during her basic training for service in the Air Force. Charles alleged three instances of negligent conduct. First, he claimed that Air Force medical personnel were negligent in administering a rubella vaccination to his mother without determining first whether she was pregnant. They were negligent a second time in failing to ascertain whether his mother was pregnant when she later contracted rubella. And finally, they were careless in failing to send for her medical records, which indicated that she had been diagnosed "probable rubella," once it was discovered that she was pregnant.

■ Having denied the government's motion to dismiss based on *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the district court accepted each of Charles' contentions and entered judgment against the United States in the amount of $625,000. The government continues to insist on this appeal that Charles' claim is barred by the *Feres* doctrine, which prohibits lawsuits brought by servicemen under the FTCA when the injuries involved in the lawsuit arise out of activities incident to military service. *Id.* at 147, 71 S.Ct. at 159. The government also argues, in the alternative, that the district court clearly erred in finding that a vaccination was administered during Ms. Scales' basic training and that state tort law, in any event, will not support a damage award based on a wrongful life theory. We hold that Charles' claim against the government is barred by *Feres* as a matter of law. Conse-

quently, our discussion of the facts need only be brief, and we find it unnecessary to reach the government's alternate points of error.

When Judy Renee Scales was inducted into the United States Air Force on June 27, 1977, and assigned to undergo basic training at Lackland Air Force Base in San Antonio, she was unaware that she was approximately one month pregnant. During her basic training, Lackland AFB experienced an outbreak of rubella. Rubella is an infectious disease, commonly known as German measles, that may cause permanent injury to an unborn fetus, particularly if it is contracted in the first trimester of pregnancy. Ms. Scales believes that she received a rubella vaccination as part of the battery of inoculations given all recruits during basic training. This vaccination, allegedly administered to Ms. Scales while she was pregnant, is claimed to have resulted in Charles' congenital rubella syndrome. The government insists that there is no evidence, other than hearsay, to support the conclusion that Ms. Scales received a rubella vaccination during her basic training. Furthermore, assuming that Ms. Scales was vaccinated against rubella, the government argues that there is no evidence demonstrating a causal connection between a rubella vaccination administered to the mother and congenital rubella syndrome in the child.

On July 25, 1977, Ms. Scales was hospitalized at Lackland AFB with complaints of nausea, stiff joints, and a rash. A physician in the dispensary diagnosed her symptoms as "probable rubella," but neither informed Ms. Scales of the diagnosis nor made any effort to determine whether she was pregnant. When Ms. Scales completed her basic training at the end of August 1977, she was transferred from Lackland AFB to Keesler Air Force Base in Biloxi, Mississippi. One month later she discovered that she was nineteen weeks pregnant. The Air Force physician treating Ms. Scales during her pregnancy never requested her medical records from Lackland, even though he administered two rubella titer tests that indicated

Ms. Scales' exposure to rubella at some point in the past. Unfortunately, the tests cannot pinpoint accurately when a rubella infection has occurred unless the infection is acute, which was not Ms. Scales' case. Ms. Scales was discharged from the Air Force in December, 1977, because of her pregnancy. On March 21, 1978, she gave birth to Charles Lewis Scales. Charles suffers from several congenital defects, including cataracts, a heart murmur, possible neurological damage, respiratory problems, growth deficiencies, and possible mental and physical retardation. Expert testimony at trial agreed that Charles' defects are characteristic of congenital rubella syndrome resulting from his mother's exposure to rubella during the early stages of her pregnancy. Ms. Scales maintains that if she had known about the "probable rubella" diagnosis and the effect of rubella on an unborn child, she would have aborted the fetus she was carrying. Thus, the basic thrust of Charles' theory of damages is that but for the negligence of Air Force medical personnel he would never have been born. The question we must address, however, is not whether Charles presents a supportable legal theory, but whether the court below had jurisdiction to consider his claim.

█ The FTCA provides that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. While this act "waives the Government's immunity from suit in sweeping language," *United States v. Yellow Cab Co.*, 340 U.S. 543, 547, 71 S.Ct. 399, 402, 95 L.Ed. 523, 528 (1951), several statutory and judicial exceptions limit the Government's waiver of immunity. Among these is the exception for liability for injuries incident to military service. In *Feres*, *supra*, the Supreme Court enunciated what has come to be known as the *Feres* doctrine, which renders the United States "not liable under the Federal Tort Claims Act for inju-

ries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 147, 71 S.Ct. at 159.[1] If a claim falls within the *Feres* exception to the waiver of tort liability; this Court lacks jurisdiction to hear the case. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390, 398 (1976); *Monaco v. United States*, 661 F.2d 129, 131 (9th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

The Supreme Court clarified and reaffirmed the rationale underlying the *Feres* doctrine in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665, 670 (1977). First, the Court reasoned that it would be inconsistent with the distinctively federal nature of the relationship between the federal government and its servicemen to make the government's liability dependent upon the fortuity of where the soldier happened to be stationed at the time of the injury, as would result under the FTCA since it requires the law of the state where the act or omission occurred to govern liability. *Id.* at 671, 97 S.Ct. at 2058. Second, the Court noted that Congress provided a special remedy for servicemen in passing the Veterans' Benefits Act, 38 U.S.C. §§ 301–1008 (1976 & Supp. 1978), which creates a "no fault" compensation scheme as a substitute for tort liability and limits the government's liability for service-related injuries. A tort claim under the FTCA, such as Charles', could circumvent the limitation established by the Act and "judicially admit at the back door that which has been legislatively turned away at the front door." 431 U.S. at 673, 97 S.Ct. at 2059, quoting, *Laird v. Nelms*, 406 U.S. 797, 802, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972); *Monaco*, *supra*, 661 F.2d at 131.

█ While these two prongs of the rationale underlying the *Feres* doctrine are

---

1. This Court explained the evolution of the *Feres* doctrine from *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), to the present in *Parker v. United States*, 611 F.2d 1007, 1009–1011 (5th Cir. 1980). *See also*

*Woodside v. United States*, 606 F.2d 134, 138–42 (6th Cir. 1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); *Citizens National Bank of Wankegan v. United States*, 594 F.2d 1154, 1156–58 (7th Cir. 1979).

recognized frequently in cases discussing the rule, *see, e.g., Johnson v. United States*, 631 F.2d 34, 35–36 (5th Cir. 1980), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *Parker, supra*, 611 F.2d at 1011; *Daberkow v. United States*, 581 F.2d 785, 787–88 (9th Cir. 1978), the third predicate for application of the doctrine stands out as the most important consideration in any single case. It is the concern for preserving military discipline. *United States v. Muniz*, 374 U.S. 150, 162, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963); *Hunt v. United States*, 636 F.2d 580, 599 (D.C.Cir. 1980). The Supreme Court explained the focus of this concern in *Stencel*: " '[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.' " 431 U.S. at 672–73, 97 S.Ct. at 2058, quoting *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954). The need to preserve military discipline, standing alone, can justify dismissal of suits arising out of activities incident to military service even when there was no command relationship between the claimant and the individual tortfeasor. *Monaco, supra*, 661 F.2d at 132.

Reasoning as the Supreme Court did in *Stencel* and as the Ninth Circuit did in *Monaco, supra*, 661 F.2d at 133–34, we hold that *Feres* bars Charles' claim for recovery. *Feres* previously has been applied to bar suits brought by nonmilitary personnel. Two of the three cases involved in *Feres* were brought by widows of servicemen. The Court in *Stencel* relied on *Feres* to prohibit an action brought by a third party indemnity plaintiff. 431 U.S. at 673, 97 S.Ct. at 2059. In *Monaco*, a case very similar to the one before us, the Ninth Circuit held that *Feres* barred a claim by an infant who alleged that the government's negligence caused chromosomal and genetic changes in her father which in turn caused her to be born with a serious birth defect. 661 F.2d at 130. Contrary to appellee's

assertion, then, the fact that Charles was not on active duty at the time of the injury does not foreclose application of the *Feres* doctrine, nor does it matter that Charles has an independent cause of action under state tort law. *Id.* at 134. *Stencel* and its progeny direct our inquiry to the manner in which the policies underlying *Feres* are affected—specifically the impact on military discipline—rather than to the status of the claimant.

The policies that support the *Feres* doctrine clearly would preclude Charles' mother from bringing suit against the United States based on the negligent medical treatment she received while on active duty in the Air Force. Two of the claims rejected in *Feres* were based on allegations of medical malpractice. Moreover, this Court has held repeatedly since *Feres* that claims based on medical malpractice fall within the bounds of the *Feres* doctrine when the plaintiff was a serviceman on active duty at the time of the alleged malpractice. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1150 (5th Cir. 1981); *Vallance v. United States*, 574 F.2d 1282, 1283 (5th Cir.), *cert. denied*, 439 U.S. 965, 99 S.Ct. 453, 58 L.Ed.2d 423 (1978); *Shults v. United States*, 421 F.2d 170 (5th Cir. 1969). *See also Veillette v. United States*, 615 F.2d 505, 507 (9th Cir. 1980). These cases tell us not only that Ms. Scales is barred from suit but also that the medical treatment administered to Ms. Scales was incident to military service. Thus, the only question that remains is whether a suit initiated by Charles would have the same disruptive effect on military discipline as a suit brought by his mother. In asking this question, courts will focus on the type of examination that will be demanded of the district court. If the court must second-guess the judgment of military officers in assessing their treatment of a member of the armed services, the claim will be deemed to have a disruptive effect on discipline and will be dismissed. *See Stencel, supra*, 431 U.S. at 674, 97 S.Ct. at 2059; *Monaco, supra*, 661 F.2d at 134; *Hunt, supra*, 636 F.2d at 599.

If we accept the argument that a suit brought by Charles' mother would tend to undermine military discipline, which we must since it is the law, then it is impossible to see how the result should be different if Charles sues the government instead. Appellee attempts to escape *Feres* by relying on those cases that allow dependents of servicemen to recover for negligent medical treatment they received in the hands of army medical personnel, e.g., *Costley v. United States*, 181 F.2d 723, 726 (5th Cir. 1950); *Grigalauskas v. United States*, 103 F.Supp. 543, 549 (D.Mass.1951), aff'd, 195 F.2d 494 (1st Cir. 1952), and by insisting that *Monaco* is distinguishable on the ground that Denise Monaco's claim "derived" from her father's claim. We find appellee's arguments unpersuasive.

In cases that allow the dependents of servicemen to sue the government, the negligent conduct is directed to the dependent alone and does not involve any decisions by the military toward enlisted personnel. Charles' allegations of negligence by contrast focus entirely on the medical treatment that Air Force physicians gave his mother. The treatment accorded his mother is inherently inseparable from the treatment accorded Charles as a fetus in his mother's body. Consequently, the district court's analysis is the same whether the suit is brought by Charles or Ms. Scales. In either instance, the judge is placed in the position of questioning the propriety of decisions or conduct of fellow members of the Armed Forces. This is precisely the type of examination that *Feres* seeks to avoid. *See Broudy v. United States*, 661 F.2d 125, 127 (9th Cir. 1981).

Furthermore, though *Monaco* may be distinguished superficially as appellee suggests, the Ninth Circuit in that case did not rest its decision on the fact that the infant plaintiff's claim lacked an independent ground of recovery. In fact, Judge Nelson noted specifically that Denise sought relief for injury to herself, "but this does not change the substantive analysis: the court still must examine the Government's activity in relation to military personnel on active duty." *Monaco, supra*, 661 F.2d at 134. As we have noted already, the medical treatment involved in this case was administered to Charles' mother while she was on active duty. Whether it constitutes negligence with respect to Charles cannot be determined without requiring the court to second-guess military judgment in a manner inconsistent with the concern for military discipline that underlies the *Feres* doctrine.

For the foregoing reasons we are compelled, however reluctantly, to reverse the judgment of the district court and dismiss the claim as barred by *Feres*. We are not blind to the tragedy of Charles' condition, and we regret the effects of our conclusion. Nevertheless, we are not writing on a clean slate. Though the rationale underlying *Feres* has been criticized by courts, e.g., *Monaco, supra*, 661 F.2d at 132; *Parker, supra*, 611 F.2d at 1010–11, and commentators, *see, e.g.,* Note, From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery? 77 Mich.L.Rev. 1099 (1979), it remains the law to which we must adhere.

REVERSED.