Ellis GASPARD and Opal Gaspard, Plaintiffs-Appellants,

v.

UNITED STATES of America, et al., Defendants-Appellees.

Dennis Ronald SHEEHAN and Nellie Katherine Sheehan, Husband and Wife, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 82–3428, 82–4204.

United States Court of Appeals, Fifth Circuit.

Sept. 6, 1983.

Rehearing and Rehearing En Banc Denied Nov. 9, 1983.

Silvestri & Massicot, Frank A. Silvestri, Luke Fontana, New Orleans, La., for plaintiffs-appellants.

E. Cooper Brown, Steven J. Phillips, New York City, for amicus-National Assoc. of Atomic Vets.

Robert S. Greenspan, Atty., Dept. of Justice, Civ. Div., Carlene V. McIntyre, Appellate Staff, Washington, D.C., Frank J. Violanti, Asst. U.S. Atty., Biloxi, Miss., for defendants-appellees.

Before THORNBERRY, GEE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

Donald Sheehan and Ellis Gaspard were servicemen who, under military orders, took part in atmospheric atomic weapons tests during the early 1950's at Desert Rock Flat, Nevada. Both have developed serious personal disabilities that they allege are a result of hazardous radiation exposure from these tests.[1] Sheehan filed this suit in Federal District Court for the Southern District of Mississippi and Gaspard in the Eastern District of Louisiana. 28 U.S.C. § 1346(b). Both veterans sought relief under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq. Gaspard also filed charges under the U.S. Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The wives of both Sheehan and Gaspard made separate claims in the suits,

---

1. Gaspard died after the filing of this case. Mrs. Gaspard indicates that in the event of a remand, she will move to amend the petition to allege wrongful death and to continue his claim as administratrix.

alleging loss of consortium and emotional distress under federal and state law. Both district courts dismissed the claims with prejudice under the *Feres* doctrine, which bars FTCA awards to members of the armed forces. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

We have consolidated the two cases on appeal to consider whether money damages may be assessed against the military or its officials in favor of veterans who suffered a latent injury while in active service. We conclude that the cases before us were properly dismissed in the district courts. In reviewing the orders of summary dismissal, we accept the plaintiffs' recitations of the facts as entirely true. Fed.R.Civ.P. 12(b); *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980).

## I. Background

The cases before us stem from a program of above-ground atomic weapons tests conducted during the 1950's at Camp Desert Rock, Nevada. Neither the events at Desert Rock nor the types of tort claims before us today are new to the federal courts. *Lombard v. United States,* 690 F.2d 215 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983); *Laswell v. Brown,* 683 F.2d 261 (8th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *Jaffee v. United States,* 663 F.2d 1226 (3d Cir.1981) (en banc), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). The pertinent facts can be set forth quickly.

On December 18, 1950, President Truman approved the testing of nuclear weapons within the continental United States at Camp Desert Rock, Nevada. From January, 1951, through October, 1958, 121 atmospheric atomic weapons tests took place in Nevada.[2]

Armed forces personnel and scientific researchers attended most of the Desert Rock tests. The troops at Desert Rock typically were ordered into open trenches shortly before each atomic blast. After the initial shock waves passed, they were ordered to march within 1,000 yards of "ground zero." The troops then were bused back to camp, where their uniforms were brushed off with ordinary household brooms. Little, if any, special follow-up care was provided. They were assured there was no danger whatsoever from residual post-blast radiation. According to the pleadings, the Army has made little, if any, attempt to follow-up its testing with warnings to the participants of any dangers from radiation exposure. Indeed, the official position of the armed forces continues to be that the personnel at Desert Rock suffered no unhealthy exposure.

Ellis Gaspard enlisted in the U.S. Army in 1946, and served until 1959. In 1955, he took part in at least four atomic bomb tests in the Desert Rock VI series. Dennis Sheehan served in the Army from 1951 through 1953, and from 1955 through 1958. In 1953, he participated in at least three atomic weapons tests in the Desert Rock V series.[3] Both servicemen acknowledge that they were on active duty status at the time of these tests, in uniform, and subject to military orders and discipline.[4]

Years after their Army discharges, Gaspard and Sheehan fell seriously ill. Taking, once again, their recitation of the facts, both men have suffered violently painful afflictions sustained as a direct result of their in-service radiation exposures. These include the breakdown of their immune systems, leukemia and other cancers, and many other afflictions. Gaspard died of these diseases in July, 1982.[5]

---

**2.** Between October, 1958 and September, 1961, a voluntary moratorium on testing was set by the United States and the Soviet Union. Between September, 1961 and August, 1963, another 102 atmospheric atomic weapons tests occurred. The tests ceased when the Limited Nuclear Test Ban Treaty was signed by the United States, the United Kingdom, and the Soviet Union on August 5, 1963.

**3.** Sheehan also attended an army training school in Camp Gifu, Japan, in 1952, where training in biological and radiological warfare exposed him to Cobalt 50, another radioactive agent.

**4.** *Cf. Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949) (FTCA available to off-duty servicemen); *Parker v. United States,* 611 F.2d 1007 (5th Cir.1980).

**5.** *See* note 1, *supra.*

Mrs. Gaspard and Mrs. Sheehan also are alleged to have suffered greatly from the ordeals of the illnesses. Mrs. Gaspard claims to have suffered two miscarriages as a result of chromosomal damage to her husband. Both Mrs. Sheehan and Mrs. Gaspard have been subjected to the emotional trauma of coping with their husbands' illnesses, and have suffered loss of consortium.

Both Gaspard and Sheehan filed claims for benefits through the Veterans Administration (VA) for service-connected disabilities. Sheehan's claim was denied. Gaspard's, filed in 1979, is still pending in the VA appellate process. Both Gaspard and Sheehan also filed administrative claims against the United States under the Federal Tort Claims Act. The FTCA claims did not result in an offer of settlement within six months, *see* 28 U.S.C. § 2675, and the servicemen filed these timely FTCA suits in federal district court, 28 U.S.C. § 1346(b), pursuant to statutory requirements. *See* 28 U.S.C. §§ 2401, 2675.

Ellis and Opal Gaspard's pleadings also include claims under the *Bivens* doctrine for an intentional violation of constitutional rights.[6]

In both suits, the FTCA claims were dismissed for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1). The *Bivens* claims in the Gaspard case were dismissed for failure to state a claim on which relief can be granted, Fed.R.Civ.P. 12(b)(6). We review these dismissals by addressing the FTCA and the *Bivens* theories in turn.

## II. FTCA Claims

At common law, the sovereign was absolutely immune from suit. Congress has passed certain statutory waivers of this sovereign immunity, among them the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq. The FTCA is a sweeping waiver of immunity for torts committed through the negligence of the government or its employees. Yet this broad waiver does not apply to the tort claims of members of the armed forces who were subject to military discipline at the time of their injury. *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The factors that might support allowing such claims are outweighed by the special need to preserve discipline and decisive military command in the armed forces, and by the availability of an alternative, comprehensive compensation scheme within the military system.

The *Feres* doctrine bars a service person's FTCA claims for in-service injuries whether filed before or after discharge. *See Monaco v. United States*, 661 F.2d 129 (9th Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); *Stanley v. Central Intelligence Agency*, 639 F.2d 1146 (5th Cir.1981).[7] Post-service torts, though, are not subject to the *Feres* bar. Such cases actually involve torts committed against a veteran who is a civilian, rather than against a soldier. Thus, damages from the negligence of VA Hospital physicians in treating a former serviceman are recoverable under the FTCA, even when the injury under treatment had its roots in active military service. *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *Bankston v. United States*, 480 F.2d 495 (5th Cir.1973); *Schwartz v. United States*, 230 F.Supp. 536 (E.D.Pa.1964), *aff'd,* 381 F.2d 627 (3d Cir.1967).

The two former servicemen attempt to fall within the *Brown* exception to the *Feres* doctrine by alleging a separate, post-service tort. They charge on appeal that

---

**6.** *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Gaspard's claims fall under Amendments One, Four, Five, Eight, Nine, and Fourteen of the U.S. Constitution.

**7.** The *Feres* doctrine does not bar FTCA claims of an active serviceman for torts occurring outside the realm of military discipline. Hence, a soldier who was off duty, out-of-uniform, and not subject to military discipline at the time could maintain an FTCA claim when his car was negligently struck by another army employee. *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). However, this exception obviously is not applicable in these cases.

the government had a new and independent duty to warn them of the dangers from radiation as scientific knowledge increased. *See Broudy v. United States,* 661 F.2d 125, 128–29 (9th Cir.1981) (Desert Rock veteran may pursue post-discharge tort theory under FTCA); *Thornwell v. United States,* 471 F.Supp. 344, 349–55 (D.D.C.1979) (LSD experimentation victim; post-discharge tort theory allowed); *Schwartz v. United States, supra* (veteran's malpractice claim must be based on post-discharge claims). This duty, they charge, arose after discharge and is an independent and proximate cause of their injuries. The district courts below, however, characterized the alleged breach of duty as a continuing tort and not separate torts. We concur with these rulings.

Gaspard and Sheehan's fundamental charge is that the government knew at the time of testing that radiation exposure was harmful, even deadly. If this is true, then the duty to warn arose while appellants were in the service, and not after discharge. There is no allegation before us that knowledge increased to the point where a new duty to treat or warn was created. The pleadings allege that the government failed to warn while the two were in the Army, and continued not to warn after they became civilians. The pleadings in this case clearly point to one continuing tort rather than separate pre- and post-discharge failures to warn.[8] This puts the claims squarely within the *Feres* doctrine and leaves us without jurisdiction to entertain the claims. *See Stanley, supra,* 639 F.2d at 1153–56.[9]

The wives of the two servicemen also bring FTCA charges in this case. The wives are careful to frame their FTCA charges as independent torts rather than to attach pendent claims of pain and suffering to their husbands' charges. They allege that the radiation exposure to their husbands caused them severe emotional distress. Mrs. Gaspard claims that two miscarriages befell her due to her husband's radiation exposure. Both wives claim that their injuries are severable from their husbands' claims and were reasonably foreseeable when the government exposed their husbands to radiation.

The *Feres* doctrine also bars the wives' FTCA claims. Although it might be argued that the need for military discipline is not a controlling factor when examining claims of non-military personnel, the Supreme Court has spoken authoritatively that no claims may be brought under the FTCA for any acts of the armed forces against its military personnel. In *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), a national guard officer was injured by a malfunctioning ejection seat in his airplane. His estate brought suit against the United States and the manufacturer. The manufacturer cross-claimed against the United States for indemnity. The Supreme Court disallowed both the direct FTCA claim and the indemnity cross-claim and dismissed the claim against the United States. It held that the *Feres* doctrine does not allow recovery under the FTCA for torts against a

---

**8.** We are aware that other courts facing veterans disability claims have allowed such a separate tort theory to survive a motion to dismiss. *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979). *Accord, Everett v. United States,* 492 F.Supp. 318 (S.D.Ohio 1980). In each case, the pleadings pointed to a purely post-discharge breach of duty, independent of the alleged in-service tort. *Cf. Stanley v. Central Intelligence Agency,* 639 F.2d 1146 (5th Cir.1981); *In re "Agent Orange" Product Liability Litigation,* 506 F.Supp. 762 (E.D.N.Y. 1980). The pleadings in the instant cases do not present a theory of independent torts.

**9.** Sheehan's claims may also be barred by the statute of limitations. FTCA claims must be filed with the appropriate federal agency within two years of discovering the injury. 28 U.S.C. § 2401(b). Sheehan applied for VA disability benefits based on radiation illnesses on March 20, 1979, and this claim was filed on March 26, 1979. A VA diagnosis of radiation-induced illness was made on July 20, 1979, and the FTCA claim was filed on March 24, 1981. If the nature of the illness was known on March 20, 1979, the date of the VA benefits application, then the FTCA claim is barred. If, as Sheehan claims, he could not have known of the connection between the radiation exposures and his illnesses until the VA's diagnosis on July 20, 1979, then the claim would not be barred under the FTCA's statute of limitations. We do not attempt to resolve this issue since we are without jurisdiction over the FTCA claim in any event. *See Blakeney v. Blakeney,* 664 F.2d 433 (5th Cir.1981) (per curiam).

serviceman on duty, whether that suit is brought by the soldier himself or a third party. The "distinctly federal" character of the armed forces, the existence of a "generous" compensation scheme under the Veterans Benefits Act, 38 U.S.C. § 321 et seq., and the "effects of the maintenance of such suits on military discipline" led to the conclusion that FTCA suits may not be maintained whenever the acts complained of involved the armed forces' treatment of their personnel.

*Stencel* clarifies the broad reach of the *Feres* doctrine by showing that it is the need to avoid the *inquiry* into military orders, and not the *consequences* of the inquiry, that justifies the military exclusion from the FTCA. *See also Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980).

Courts, therefore, have widely ruled that FTCA relief is not available to family members for claims based on the injuries to their relatives in the armed forces. *Monaco v. United States,* 661 F.2d 129 (9th Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982) (children's claims); *In re "Agent Orange" Product Liability Litigation,* 506 F.Supp. 762 (E.D.N.Y.1980) (children's claims); *Harrison v. United States,* 479 F.Supp. 529 (D.Conn.1979), *aff'd without opinion,* 622 F.2d 573 (2d Cir.), *cert. denied,* 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980) (wife's claims). This is true even when the claims of the family members are independent of the serviceman's cause of action under applicable state law. *De Font v. United States,* 453 F.2d 1239 (1st Cir.), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972); *Van Sickel v. United States,* 285 F.2d 87 (9th Cir. 1960); *Harrison v. United States, supra.*

This Court has barred claims even where the family member has no alternative reme-

dy under the Veterans Benefits Act. *Scales v. United States,* 685 F.2d 970 (5th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983). Since a crucial element of the claims of Mrs. Gaspard and Mrs. Sheehan is the in-service injury inflicted on their husbands, we must bar their claims. We see no distinction between pendent and independent claims in this regard—we need look only to the factual elements underlying the claim to find them barred under the *Feres* doctrine.

The remedies of the Veterans Benefits Act are meant to be exclusive, and the need for a strong and capable military overwhelms the factors supporting recovery. We therefore dismiss, for lack of subject matter jurisdiction, the FTCA claims of these Desert Rock veterans. *Accord, Lombard v. United States,* 690 F.2d 215 (D.C. Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983); *Laswell v. Brown,* 683 F.2d 261 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *Jaffee v. United States,* 663 F.2d 1226 (3d Cir.1981) (en banc), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). *See also Stanley v. Central Intelligence Agency,* 639 F.2d 1146 (5th Cir.1981).[10]

### III. *Bivens Claims*

■■■ Gaspard's appeal also alleges intentional interference with well-established constitutional rights, raised under the authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). It is "crystal clear" that *Bivens* claims are distinct from FTCA actions, *Carlson v. Green,* 446 U.S. 14, 19–20, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980), and the *Feres* bar therefore does not automatically preclude the *Bivens* claim.[11]

---

**10.** We note additionally that the record on appeal shows no evidence that Mrs. Gaspard or Mrs. Sheehan filed administrative claims under the FTCA separate from those of their husbands. We need not consider whether their husbands' FTCA claims would be sufficient to preserve their independent tort claims, since we find we have no subject matter jurisdiction over the claims in any event.

**11.** Gaspard's *Bivens* claims are not barred by the statute of limitations. This Court looks to state law to determine the applicable statute of limitations for *Bivens* actions. *Alford v. United States,* 693 F.2d 498 (5th Cir.1982); *United Klans of America v. McGovern,* 621 F.2d 152 (5th Cir.1980). *See also, Board of Regents of the University of the State of New York v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (under 42 U.S.C. § 1983,

■ We find, however, that the rationale behind the *Feres* doctrine bars the *Bivens* claims before us today. The recent case of *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) examined *Bivens* claims of active Naval personnel against their commanding officers, involving allegations of intentional racial discrimination. The Supreme Court looked at the "special factors counseling hesitation" in creating a *Bivens* remedy for members of the Armed Forces. It concluded that the judiciary's interest in protecting the constitutional rights of service personnel was fully considered and adequately safeguarded through the congressionally-imposed system of military administrative procedures. The military remedies available in *Wallace* were considered a proper balance of the need to remedy wrongs taking place within the military and the need for Congress and military officers to have a free hand in operat-

ing our armed forces. The Supreme Court therefore ruled that money damages are unavailable to active servicemen for constitutional wrongs that Congress meant to cover through the comprehensive system of military justice and compensation.[12]

The rationale behind *Wallace* is much the same as the Court earlier applied in *Feres.* The need for plenary discretion in military affairs and the existence of an adequate, congressionally-imposed compensation scheme instruct us to avoid either imposing *or inquiring into* monetary damages when a service person is injured. *See Jaffee v. United States,* 663 F.2d 1226, 1234–37 (3d Cir.1981) (en banc), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Injuries of armed forces personnel, whether resulting in personal injury claims or constitutional claims, are meant to be covered by the compensation scheme of the Veterans Benefits Act.[13] We see no distinction be-

---

state principles of tolling apply). *Cf. Moore v. El Paso County, Texas,* 660 F.2d 586 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982) (under 42 U.S.C. § 1983, federal principles of accrual apply); *Lavellee v. Listi,* 611 F.2d 1129 (5th Cir.1980) (accord). Gaspard makes the uncontroverted claim that he was a resident of Louisiana during all relevant times. Louisiana would apply a one year prescriptive period to his claim. La.Civ.Code Ann. art. 3536 (West Supp.1982); *Proctor v. Flex,* 567 F.2d 635 (5th Cir.1978) (per curiam). *See also Perrin v. Rodriguez,* 153 So. 555 (La. App.1934) (cause of action not tolled when tortfeasor keeps victim in ignorance of fact of damage or cause thereof). Gaspard's *Bivens* cause of action arose when he first had reason to know of the injury. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Lavellee v. Listi, supra.*

Gaspard evidently first discovered his disability in October, 1979. He gave notice to the Veterans Administration in October, 1979 and to the Nuclear Regulatory Commission in November, 1979. He filed the *Bivens* charges in this suit on October 1, 1980, within one year of discovery. The statute of limitations therefore does not bar his claim.

12. The *Wallace* court did acknowledge that *Bivens* would still support a petition for injunctive relief by a serviceman. *See, e.g., Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Of course, injunctive relief, a matter of discretion in the district court, could not be used to obstruct necessary military orders. Other non-monetary relief may also be available in the civilian courts, even in some cases where the military justice system

retains jurisdiction. *E.g., Burns v. Wilson,* 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953) (court-martial subject to habeas corpus review). *See Sherman, Legal Inadequacies and Doctrinal Restraints in Controlling the Military,* 49 Ind.L.J. 539, 575–80 (1974). The instant case, however, concerns only a request for money damages.

13. Congress is in the process of reconsidering the extent to which sovereign immunity should be waived for both constitutional and non-constitutional tort claims. *See* Madden, Allard, & Remes, *Bedtime for* Bivens: *Substituting the United States as Defendant in Constitutional Tort Suits,* 20 Harv.J. on Legis. 469, 470 n. 2, 472–78 (1983). One of the latest attempts, S. 775, 98th Cong., 1st Sess. (1983), would waive sovereign immunity for constitutional torts and eliminate the *Bivens* action against federal officials. *See also, e.g.,* S. 829, 98th Cong., 1st Sess. (1983); H.R. 595, 98th Cong., 1st Sess. (1983). The bill does not alter the statutory exemption to the FTCA that underlies the *Feres* doctrine, 28 U.S.C. § 2680(j), but it would allow suit against the government for the constitutional torts of military officials, the so-called *Bivens* violation. *Compare* S. 775, § 6(a) (which would leave 28 U.S.C. § 2680(j) unchanged regarding the military exclusion from the FTCA) *with id.* § 7(a) (which is silent regarding a military exclusion for constitutional torts). The bill is remarkable both for the distinction it raises between common law and constitutional torts, and for its willingness to limit the *Feres* doctrine to torts of the common law, non-constitutional variety.

The bill seemingly would eradicate the exclusivity of alternative statutory remedies, such as

tween claims against military officials filed in-service and those filed post-discharge, as long as the claims are based on official military conduct. We therefore dismiss the *Bivens* charges against the military officials.[14]

Gaspard also levels *Bivens* charges against the civilian officials of the Atomic Energy Commission (AEC),[15] the former government agency which played a major role in the Desert Rock tests. Gaspard claims that even if the *Bivens* claims for damages are barred as to military officials, they are not barred as to non-military officials. Even if this contention is correct in general terms,[16] it does not apply to this case. The former officials of the AEC are named only for the role they allegedly played in the Desert Rock tests. These tests were planned and conducted by both military and civilian personnel. Clearly then, any involvement of civilian officials must have been in conjunction with military planning and orders. This is not a case involving a purely civilian governmental interference with the established constitutional rights of servicemen. Since an inquiry into the AEC's role at Desert Rock would

necessitate an investigation of military affairs, we hold that *Wallace* also bars the claims against the civilian officials in this case.

Mrs. Gaspard has filed her own *Bivens* charges against the same officials, both military and civilian. Her claims, whether pendent to or independent of her husband's charges, would require an inquiry into military affairs and therefore are also barred as we conclude in Part II of this opinion.

Finally, Gaspard charges on appeal that some of the violations of his constitutional rights stem not from the 1955 Desert Rock tests alone, but also from the refusal of the VA to certify his disability as service-related and grant him a service-related pension. We recognize that the availability of VA pensions and other administrative remedies is, in part, the justification for precluding servicemen from bringing *Bivens* claims against the government. Gaspard claims, however, that his inability to secure a VA pension either qualifies him to file suit under other legal theories based on his Desert Rock experiences, or constitutes a separate tort that should itself be subject to *Bivens* scrutiny.

the Veterans Benefits Act. Until such a bill becomes law, however, we find no support in the existing statutory framework for the *Bivens* claims before us today. It is the job of Congress and not the judiciary to remedy possible imperfections in a comprehensive statutory framework. This principle is all the more compelling since Congress is making active attempts to redraw the lines defining liability for constitutional torts.

Furthermore, since the attempts at reform would substitute the United States for government officials in *Bivens* actions, we see congressional adherence to the notion that tort suits against government officials interfere with effective government. *See* Madden, Allard, & Remes, *supra,* at 473–74. Since there is, at present, no waiver of sovereign immunity for *Bivens* violations, such suits must be brought against the government officials themselves. The courts have found that this would be an unacceptable development in the military context.

**14.** In a case decided the same day as *Wallace, Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court disallowed a *Bivens* claim for damages brought by a government civilian employee against his government supervisor. The Court found the

congressionally-imposed remedial scheme, *see* —— U.S. at ———–——, 103 S.Ct. at 2414–17, to pass constitutional muster as a compensatory gesture, and that agency efficiency would be inhibited if supervisory personnel were subject to suit. It therefore appears that the military status of the plaintiffs in *Wallace* is not the cornerstone of the decision. *Cf. United States v. Muniz,* 374 U.S. 150, 162, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963) (*Feres* doctrine "best explained" by special relationship between soldiers and their superiors).

**15.** The activities of the former Atomic Energy Commission are now split between the Nuclear Regulatory Commission and the Department of Energy.

**16.** The Supreme Court was careful in *Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) to bar *Bivens* actions for damages only where a government civilian employee is suing his or her superior. The court was careful not to address *Bivens* actions brought by one agency employee against officials of a different agency. The Supreme Court traditionally has allowed such claims. *E.g., Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

We must reject these assertions. Gaspard's inability to secure a VA pension does not open the door to *Bivens* standing to challenge the 1955 Desert Rock tests. It is the *existence* of the VA compensation scheme, and not payment in fact, that lessens the justification for a *Bivens* remedy. We consider the congressionally-authorized military compensation system to be comprehensive and conclusive even when individual claimants may fall between the cracks of the implementing regulations. *See Scales v. United States,* 685 F.2d 970 (5th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983) (*Feres* doctrine bars FTCA claims of service person's daughter even when Veterans Benefits Act allows no administrative remedy).

We are perhaps more sympathetic to a charge that remedies are inadequate when the underlying tort is of constitutional dimension.[17] Yet Congress has taken into account the constitutional rights of service personnel in fashioning the available administrative remedies as exclusive. Therefore, denial of a VA pension cannot serve as a ground for an alternative cause of action.[18]

Finally, regarding Gaspard's suggestion that the denial of his VA pension is a separate tort, we note that Gaspard has not named any party to this suit who might be responsible for the denial.[19]

■■■■ In sum, we find no compelling reason in this case to expand the reach of the *Bivens* action to the inner workings of the military. We therefore affirm the dismissal of the *Bivens* claims for failure to state a claim on which relief can be granted, Fed.R.Civ.P. 12(b)(6).[20]

**17.** The *Wallace* Court paid homage to the remark of Chief Justice Warren that "our citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes." *Wallace,* —— U.S. at ——, 103 S.Ct. at 2367–68, *quoting* Warren, *The Bill of Rights and the Military,* 37 N.Y.U.L.Rev. 181, 188 (1962). We do not wish today's decision to destroy the last remnants of hope in the authority of the federal courts to denounce an intentional, catastrophic scheme that perhaps might take place elsewhere in our government. The holocausts that have taken place on our planet in the last generations soberly remind us of "the fragility of those protections which the legal order affords against human rights violations." *Jaffee, supra,* 663 F.2d at 1249 (Gibbons, J., dissenting). Today's case, however, simply does not present an allegation that, if proved, could not be remedied adequately through the available statutory scheme. Even though awards under the VA scheme may prove both attenuated and elusive in specific cases, we do not find them constitutionally deficient.

**18.** Normally, administrative adjudications are themselves subject to judicial review, and wrongful denials of entitlements can be remedied through that review process. Individual denials of VA pensions, however, are not subject to judicial review. 38 U.S.C. § 211(a). However, a wrongful denial that rises to the level of an intentional constitutional violation could support a separate *Bivens* theory against the administrative officials. This could take the form of a *Bivens* request for mandamus, or perhaps could include a prayer for money damages. Therefore, even without the right to direct judicial appeal of an isolated denial of VA benefits, a constitutional violation could still be subject to judicial scrutiny.

**19.** At oral argument on appeal, counsel for Gaspard raised the thought that the denial of VA benefits is a separate tort, constituting an intentional violation of his constitutional right to compensation for his earlier injuries. He charges that a mere handful of 250,000 atomic test era veterans have succeeded in securing VA benefits for radiation-related disabilities. Gaspard urges that a conspiracy deep within the VA appeals system is not only denying his claim for benefits, but is denying categorically the radiation-related claims of all service personnel. This is a *Bivens* allegation separate and distinct from the charges stemming from the 1955 radiation exposure. It is a charge of a 1970's conspiracy to deprive Gaspard and other veterans of important constitutional rights.

This charge, first brought to our attention at oral argument, is neither contained in the pleadings or records of the district court nor raised as an issue on appeal. Officials of the VA are not named in this suit. It therefore is improper for us to consider any such allegations, and we confine our holdings to those issues properly before us.

We do note, however, that such claims would constitute claims by veterans as civilians, not subject to the *Feres-Wallace* bar on military claims.

**20.** The government officials charged under the *Bivens* theories in this case were never served, never appeared, and were not represented on appeal. The United States, as amicus curiae for these officials, asks us to dismiss the *Bivens*

Finding no jurisdiction against the United States under the FTCA allegations and no valid theory for relief against the government officials under the *Bivens* claims, we AFFIRM the dismissals in the two cases before us.

AFFIRMED.

claims summarily because process was never served on the former government officials. We decline to do so. The record shows no evidence that Gaspard was unsuccessful in service of process due to inexcusable neglect. Rather, the evidence suggests that the exact identity and information regarding the whereabouts of these officials may be uniquely in the hands of the government itself. There was notice to the United States and to various government agencies of the existence of the suit. Gaspard contended in the district court that process had not been served on these officials due to the government's refusal to comply with discovery requests.

Dismissal with prejudice for failure to make service of process is warranted only "in extreme situations where there is a clear record of delay or contumacious conduct by the plaintiff." *Silas v. Sears, Roebuck & Co.,* 586 F.2d 382, 385 (5th Cir.1978) (citation omitted). *Accord, Burden v. Yates,* 644 F.2d 503 (5th Cir. 1981); *Alexander v. Unification Church of America,* 634 F.2d 673 (2d Cir.1980); *Canada v. Mathews,* 449 F.2d 253 (5th Cir.1971). Without evidence of Gaspard's inexcusable neglect in ignoring the requirements of service of process, we find the district court was correct in reaching the substantive grounds. The court was correct in dismissing this action for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), regarding the FTCA claims and for failure to state a claim on which relief can be granted, Fed.R.Civ.P. 12(b)(6), on the *Bivens* claims, rather than on the claim of defective service of process.