Tracey CARTER, as Personal Representative of the Estate of Charles M. Carter, Deceased, Plaintiff,

v.

The CITY OF CHEYENNE, The Cheyenne Municipal Airport and Northrup Corporation, Defendants,

v.

The CITY OF CHEYENNE, Third-Party Plaintiff and Appellant,

v.

The UNITED STATES of America, Third-Party Defendant and Appellee.

No. 79–2211.

United States Court of Appeals, Tenth Circuit.

Argued May 11, 1981.

Decided May 29, 1981.

John B. Rogers, Cheyenne, Wyo., for third-party plaintiff and appellant.

Paul M. Honigberg, Dept. of Justice, Washington, D. C. (Alice Daniel, Asst. Atty. Gen., Washington, D. C., Charles E. Graves, U. S. Atty., J. Charles Theisen, Atty., Civil Division, Torts Branch, Dept. of Justice, Washington, D. C., on the brief), for third-party defendant and appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This action arose out of the crash of an aircraft, a United States Air Force T–38, which crash occurred on July 25, 1977, while a landing was being attempted on the airfield runway of the municipal airport at Cheyenne, Wyoming. Captain Charles M. Carter, the deceased in this case, was the pilot of the aircraft. He was part of the Air Force Thunderbird Demonstration Team. Unfortunately, Captain Carter was killed in the crash.

The action of the plaintiff Tracey Carter, personal representative of the Estate of Charles M. Carter, named the City of Cheyenne and other defendants, and alleged that there was negligent design, construction, maintenance, control and supervision of the airfield and runway. The City of Cheyenne, in turn, has fashioned a third party claim against the United States of America. Relief here is sought under the Federal Tort Claims Act. The City alleges negligence on the part of representatives of the Federal Aviation Administration in providing Captain Carter incorrect data pertaining to landing field conditions just prior to his landing.

The airfield at Cheyenne is a non-military one which is used occasionally by the United States Air Force in connection with functions at F. E. Warren Air Force Base, and is used by the Wyoming National Guard pursuant to a joint use agreement with the City of Cheyenne.

The main issue is whether the federal court lacked subject matter jurisdiction over the third party complaint in this case under the principles contained in the decision of the Supreme Court in *Stencel Aero Engineering Corporation v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), *rehearing denied* 434 U.S. 882, 98 S.Ct. 250, 54 L.Ed.2d 168. The trial court relied on *Stencel* in its holding that the United States could not properly be impleaded as a third party defendant in the case because the Federal Tort Claims Act does not authorize recovery, directly or indirectly, for injuries or death to a serviceman or servicewoman incident to Armed Forces activity.

The City of Cheyenne concedes that the plaintiff would be unable to sue the United States government in view of the fact that this was a duty connected injury leading to the death, but it maintains that the City of Cheyenne, a defendant in the case, as a third party plaintiff, may, pursuant to Rule 14 of the Federal Rules of Civil Procedure, implead a party, here the United States, even though the plaintiff could not have sued the United States directly. The City of Cheyenne seeks to distinguish the decisions of the United States Supreme Court in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and in *Sten-*

*cel v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

The United States District Court, after conducting a hearing, entered its order granting the motion of the third party defendant United States of America to dismiss for lack of subject matter jurisdiction. This order was entered August 13th. In it was the statement required by 28 U.S.C. § 1292 authorizing an immediate request for an appeal of an interlocutory order. The City of Cheyenne thereupon filed its petition for interlocutory appeal to this court. The petition seeking interlocutory appeal was granted.

The issue boils down to whether, considering the fact that the plaintiff would be unable to sue the United States under the circumstances, given the fact that the accident occurred while Carter was in the line of duty, the defendant, Cheyenne, may interpose a third party complaint against the United States seeking indemnity for any damages which flow from the principal action. The claim is that the United States in a third party indemnity does not have the same defenses and immunities which are applicable in an action by a serviceman injured or killed in the line of duty.

\*　　\*　　\*　　\*　　\*　　\*

The City of Cheyenne relies on the decision of the Supreme Court in *United States v. Yellow Cab Co.,* 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). There it was held that the Federal Tort Claims Act was to be read broadly to permit an original defendant in the case to implead the United States as a third party defendant in an indemnity or contribution action, where the defendant-third party plaintiff claims that the United States was wholly or partly responsible for the plaintiff's injury.

But *Yellow Cab Co.* does not stand alone. A fully reasoned decision of the Supreme Court, in *Feres v. United States, supra,* which was decided contemporaneously with *Yellow Cab Co., supra,* held that the United States was not liable in such circumstances under the Federal Tort Claims Act for injuries to a serviceman arising out of or in the course of activity incident to service in the military. The *Feres* case laid down the single test that the injury to the serviceman be a service connected injury. The Court reviewed all possible aspects and held that these facts did not give rise to an action under the Federal Tort Claims Act.

*Stencel Aero Engineering Corporation v. United States, supra,* addressed itself to the question of whether, after a member of the Armed Forces had brought a tort action against a private defendant, that defendant could seek indemnity from the United States as a third party defendant under the Federal Tort Claims Act, on the ground that government officials were responsible for the plaintiff's injuries. The Supreme Court took the position that the right of a third party to recover in an indemnity action against the United States, which right was recognized in *Yellow Cab,* had to be limited by the rationale of *Feres* wherein the injured party was a serviceman. 431 U.S. at 674, 97 S.Ct. at 2059.

It will be helpful to set forth here the facts of the *Stencel* case. A National Guard captain was, in that case, injured when the ejection system of his aircraft, which had been manufactured by Stencel, malfunctioned during a mid-air emergency. The captain filed suit against the United States and Stencel. Stencel, in turn, cross-claimed against the United States, seeking indemnity grounded on the fact that the ejection system malfunctioned because of faulty specifications, requirements and components provided by the United States. But under those facts the Court refused to allow the proposed third party action. In reaching that conclusion a three-fold test was laid down: *First,* the Court noted the relationship between the government and the suppliers of ordinance being distinctly federal in character. *Second,* the Court stated that the Veterans Benefit Act establishes a statutory compensation scheme for injured servicemen without regard to fault, as a substitute to tort liability. *Third,* the court addressed the effect of maintaining such suits on military discipline. One gets the impression that these tests are fully applicable to a case of this kind. However,

subsequent cases point to a contrary approach.

Indeed, in *Hatzlachh Supply Co., Inc. v. United States*, 444 U.S. 460, 100 S.Ct. 647, 650, 62 L.Ed.2d 614 (1980), the Court mentioned that *Stencel* had recognized:

> * * * that the Veterans' Benefit Act provided compensation to injured servicemen, which we understood Congress intended to be the sole remedy for service connected injuries [and, therefore] we decline to construe the Tort Claims Act to permit third-party indemnity suits that in effect would expose the Government to greater liability than that contemplated under the statutory compensation scheme. In *Stencel,* Congress had provided a remedy which we thought to be exclusive * * * *Stencel* [holds that] the existence of an exclusive statutory compensation remedy negates tort liability * * *.

■ From consideration of *Hatzlachh* it is to be concluded that where the Veterans Benefit Act is present, as it is in our case, it is the sole or exclusive remedy for claims which involve service related injuries, irrespective of who sues the United States. Thus, then, in a Veterans Benefit Act case growing out of a service connected injury, there cannot be a recovery of indemnity for payments to the serviceman who suffered the injury. *Hatzlachh* applied the single test whether the injury to the serviceman was service connected.

■ From a consideration of these cases, it must be held that in a case like the present one, wherein the injury was in the line of duty, the sole recovery is that derived from the Veterans Benefit Act. If such relief has been made available to the serviceman, it is not possible for the joint tort feasor to sue the government in a third party action for the purpose of obtaining indemnity. To allow the indemnity action while disallowing a direct action would be grossly inconsistent.

A very recent case which considered this problem and reached the same result is *In the Matter of Ionian Glow Marine Inc.*, 510 F.Supp. 196 (E.D.Va.1981). This case arose out of a collision between a United States ship and a ship owned by Ionian Glow. The United States and Ionian Glow agreed that the former would pay 35% of Ionian Glow's provable damages. The issue subsequently before the court was whether Ionian Glow could include in its provable damages those amounts paid by Ionian Glow to three members of the armed forces who were injured during the collision. The court applied the *Stencel* reasoning in refusing to allow Ionian Glow to include those amounts as part of its damages. The opinion noted that there was no contractual relationship between Ionian Glow and the United States as there had been between Stencel and the United States. The court held further that the *Feres* doctrine applied; a serviceman can recover, if at all, against the United States under the Veterans Benefit Act. The court concluded that to allow Ionian Glow to include payments made to servicemen in its provable damages of which the government had agreed to pay 35% would circumvent the purpose of the Veterans Benefit Act to provide an upper limit of disability that the government would be required to pay for service related injuries. The court in *Ionian Glow* also noted, as we have in the present case, that there is the problem of doing by indirection that which is not available directly. The court said that to approve third party recovery would be to circumvent the Supreme Court's ruling.

*See also Uptegrove v. United States*, 600 F.2d 1248, 1250 (9th Cir. 1979), *cert. denied* 444 U.S. 1044, 100 S.Ct. 732, 62 L.Ed.2d 730 (1980). In that case the Ninth Circuit said:

> The fact that all of * * * [the *Stencel*] considerations are not present in a particular case does not mean that the *Feres* doctrine should not be applied. (Citation omitted). The Supreme Court has never indicated that *Feres* should be limited only to situations in which interferences with military discipline is threatened.

We agree with the *Uptegrove* reasoning that the status of the deceased or injured person is that which controls in determining whether the claimant may recover under the Tort Claims Act. That is, if the injury

or death was service related, the claimant may not recover under the Federal Tort Claims Act. It necessarily follows that a third person, here the City of Cheyenne, which has made no allegations that the death of Carter was not service related, should not be allowed to recover and thus enter through an indirect door.

In summary, then, Cheyenne is precluded from impleading and recovering from the United States. *Stencel Aero Engineering Corp. v. United States*, 431 U.S. at 673, 97 S.Ct. at 2058. *See also Monarch Insurance Co. v. United States*, 511 F.Supp. 201 (E.D. Va., 1981). The Veterans Benefit Act provides the sole and exclusive remedy for service related injuries, and the United States is not to be held liable for amounts in excess of the upper limits which are prescribed by that Act.

While we recognize that it is Mrs. Carter and not the City of Cheyenne who will be compensated by the Veterans Benefit Act, the fact that Cheyenne is not allowed to implead the United States in this action and render the United States liable for damages which exceed those provided in the Veterans Benefit Act does not, of course, preclude Cheyenne from arguing at the trial of the present action that the negligence of the United States rather than the negligence of the City of Cheyenne was the cause of Carter's death. It is the issue of damages which is precluded, not the issue of negligence. The City of Cheyenne will only be liable for its own negligence, if any, and not for any negligence on the part of the United States.

Our holding is, therefore, that the district court was correct in dismissing the third party action herein for lack of subject matter jurisdiction. When, as here, a case under the Federal Tort Claims Act falls within the *Feres* doctrine, under which the Supreme Court has held that this Act did not waive immunity for service related claims, the federal court lacks jurisdiction to hear the matter. Following the principles cited in *Stencel, supra*, the third party claim in this case is barred by *Feres*, by *Stencel* and by *Hatzlachh*.

The judgment of the district court is affirmed.