James B. STANLEY, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

No. 78–8141–CIV–JAG.

United States District Court, S.D. Florida, N.D.

Oct. 28, 1983.

---

John F. Romano, Cone, Wagner, Nugent, Johnson, Hazouri & Roth, West Palm Beach, Fla., for plaintiff.

Alan Mishael, John L. Euler, John Farley, III, J. Paul McGrath, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., James Mingle, Asst. Atty. Gen., Stephen H. Sachs, Atty. Gen., Frederick Savage, Asst. Atty. Gen., Baltimore, Md., for defendants.

## ORDER

GONZALEZ, District Judge.

### I

THIS CAUSE has come before the court for review *sua sponte* upon the issuance of the Supreme Court's opinion in *Chappell v. Wallace*, —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), and upon counsel for the plaintiff's letter to the court and the plaintiff's response to the previously filed motions to dismiss. In light of all of the foregoing, the court finds it necessary to clarify its prior opinion denying in part the defendants' motion to dismiss, *Stanley v. United States, et al. (Stanley II )*, 549 F.Supp. 327 (S.D.Fla.1982), and the applica-

tion of the Supreme Court's opinion in *Chappell* to that decision.

This case involves the secret administration of LSD to the plaintiff, a member of the United States Army, as part of an Army experiment.

In 1958, the plaintiff James Stanley was a Master Sergeant in the United States Army stationed in Fort Knox, Kentucky. Stanley volunteered to participate in a program at the Chemical Warfare Laboratories at the Army Chemical Center, Aberdeen Proving Grounds, Edgewood Arsenal, Maryland. The purpose of the program allegedly was the development and testing of methods of defense against chemical warfare attack, including the testing of various gas masks and protective clothing.

■ During interviews with military and civilian personnel at Edgewood Arsenal, Stanley was asked to drink a clear liquid which, unknown to him, contained lysergic acid diethylamide (LSD).[1] Stanley alleges that he suffered severe reactions, including hallucinations, as a result of ingesting the LSD. When he returned to active duty at Fort Knox a month later, he maintains that he was in an altered behavioral and emotional state.[2]

Stanley continued to serve his country in the Army for eleven years, all the while completely unaware of the wrong knowingly perpetrated against him. In 1969, the Army discharged Mr. Stanley without informing him that he had ingested LSD years earlier. In December 1975, Stanley received a letter from the Department of the Army, Walter Reed Army Medical Center, soliciting his participation in a follow-up study of the subjects of the 1958 LSD experiments. Only then did Mr. Stanley learn that the Army had secretly administered LSD to him in 1958.

The original complaint in this case consisted of claims brought against the United States under the Federal Tort Claims Act (FTCA or the "Act"), Pub.L. No. 601, 60 Stat. 842 (1946) (codified as amended in scattered sections of 28 U.S.C.).[3] The question of this court's jurisdiction over those claims was first raised on the defendants' motion for summary judgment. This court granted the motion for summary judgment on the basis of the doctrine announced in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The *Feres* doctrine provides that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159.

Upon review of that ruling, the United States Court of Appeals for the Fifth Circuit concluded that this court's application of the *Feres* doctrine to preclude the claims brought in the original complaint was correct, but that this court improperly granted the motion for summary judgment. *Stanley v. CIA (Stanley I ),* 639 F.2d 1146 (1981). Rather, the Fifth Circuit held, the proper disposition of the case was dismissal

---

**1.** Stanley's allegation that the military surreptitiously administered LSD to him, if true, clearly demonstrates "that his constitutional rights have been violated." *Garcia v. United States,* 666 F.2d 960, 962 (5th Cir.1982) (affirming dismissal by this court of *Bivens* action brought by drug informer against United States and individual members of marshal's service). The source of the plaintiff's *Bivens* action in the instant case is the Fifth Amendment right to be free to decide for oneself whether to submit to drug therapy. *Stanley II,* 549 F.Supp. at 331 (relying on *Mills v. Rogers,* 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982)).

**2.** Stanley alleges that following the completion of the Army's LSD testing, he periodically became incoherent and subjected his family to physical abuse, often not recalling these events afterwards. He further maintains that the LSD impaired his performance of military duties, prompting a reduction in his service rank. Amended Complaint ¶ 5 (filed Apr. 29, 1981). Stanley also claims that the dissolution of his marriage in 1970 was primarily due to the psychological problems that have plagued him since his encounter with LSD. *Id.* ¶ 8.

**3.** The Act waived the United States Government's sovereign immunity for the torts of its employees by granting the federal district courts jurisdiction over suits for damages "caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b) (1976).

of the complaint for lack of subject matter jurisdiction. The court of appeals then remanded the case for the trial court's consideration of any amendment that the plaintiff might offer to cure the jurisdictional defect.

The plaintiff then amended his complaint[4] and, in addition to the original allegations that the defendants gave him false information regarding the program in which he participated, he also alleged that the defendants were grossly negligent in failing to debrief and inform him of the 1958 episode upon his discharge, and in failing to continue to monitor his condition subsequent to his discharge. The plaintiff seeks damages for this allegedly negligent conduct.

The defendant filed a motion to dismiss the Amended Complaint, arguing, *inter alia*, that the Fifth Circuit's opinion precluded the plaintiff from alleging any claim under the FTCA and that the plaintiff could not maintain any cause of action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), because any such claim would also be barred by the FTCA, did not rise to constitutional magnitude, or would be precluded by the applicable statute of limitations.

■■ Heeding the opinion of the Fifth Circuit in *Stanley I*, this court decided that the plaintiff could not plead a statutory (i.e. FTCA) or *Bivens*-type claim against the Government itself. But this court did hold that Mr. Stanley had a viable *Bivens* action against individual agents and officers of the United States who participated in the LSD experiment. *Stanley II*, 549 F.Supp.

at 329–32.[5] It is this last conclusion that the court finds necessary to reaffirm at this time.

In concluding that the plaintiff has a viable cause of action based on *Bivens* against the individual defendants, the court rejected the defendants' argument that any *Bivens* claim also was barred by the *Feres* doctrine. *Id.* at 330. The court cited the opinion of the United States Court of Appeals for the Ninth Circuit in *Wallace v. Chappell*, 661 F.2d 729 (9th Cir.1981), in support of its theory that although a claim against the government under the FTCA may be barred by the *Feres* doctrine, a *Bivens* cause of action arising from the same set of facts, against individuals, is not necessarily barred by *Feres*. The Supreme Court now having reversed the Ninth Circuit in *Chappell v. Wallace*, —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), it has been suggested that the plaintiff no longer has a viable cause of action based on *Bivens*. The task before this court is to decide if *Chappell* is controlling in the instant case, and whether the exceptions to a *Bivens* action preclude the plaintiff's claims against federal officers.

II

■■ *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), established that the victim of a constitutional violation by a federal officer has the right to recover damages against the official in federal court despite the absence of any statute conferring such a right; the doctrine of sovereign immunity bars a similar action against the United States itself. *Stanley II*, 549 F.Supp. at 330 (relying on

---

**4.** Plaintiff's original complaint named as defendants the Central Intelligence Agency, the United States Department of Defense, and the United States Army. Plaintiff later amended his complaint to name as defendants the United States Government and unknown individual federal agents and officers. Amended Complaint (filed Apr. 29, 1981). A Second Amended Complaint, filed on February 3, 1983, named as defendants several individuals who allegedly violated the plaintiff's constitutional rights during and after his service in the Army. These indi-

viduals include Joseph R. Bertino, M.D., Board of Regents of the University of Maryland, H.D. Collier, Albert Dreisbach, Bernard G. Elfert, Sidney Gottlieb, M.D., Richard Helms, Gerald Klee, M.D., Van Sim, M.D., and Walter Weintraub.

**5.** Although the Fifth Circuit did not express an opinion on the merits of the plaintiff's amended pleadings, it did find "that Stanley has at least a colorable constitutional claim based on *Bivens* ...." *Stanley I*, 639 F.2d at 1159.

*Jaffee v. United States,* 592 F.2d 712 (3d Cir.1979), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979)).[6] The *Bivens* cause of action may be defeated in a particular case, however, in two situations. The first is when defendants demonstrate "special factors counselling hesitation in the absence of affirmative action by Congress." *Bivens,* 403 U.S. at 396, 91 S.Ct. at 2004; *see Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980); *Garcia v. United States,* 666 F.2d 960, 965 (5th Cir.1982). The second is when defendants prove that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective. *Bivens,* 403 U.S. at 397, 91 S.Ct. at 2005; *see Carlson,* 446 U.S. at 18, 100 S.Ct. at 1471; *Garcia,* 666 F.2d at 965.

The *Bivens* action arose out of the need to deter federal officers from violating a citizen's constitutional rights. The Supreme Court recognized that absent a constitutional remedy, complainants would have no other form of judicial relief from federal abuses. Creation of the *Bivens* action was consistent with the traditional view that "damages ... [be] recognized as the ordinary remedy for an invasion of personal interests in liberty." *Bivens,* 403 U.S. at 395, 91 S.Ct. at 2004.

In *Chappell v. Wallace,* the Supreme Court reviewed the propriety of a *Bivens* action arising out of an intramilitary dispute. The Court held that "the unique disciplinary structure of the military establishment and Congress' activity in the [military] field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." —— U.S. ——, 103 S.Ct. at 2367.

This court strongly believes that the *Chappell* decision has no effect whatsoever on the plaintiff's ability to maintain a cause of action arising from the facts of the instant case. Although the court relied on *Wallace v. Chappell,* 661 F.2d 729 (9th Cir.1981), to support the reasoning in its prior ruling that Mr. Stanley has a valid *Bivens* claim, the plaintiff's cause of action is in no way dependent upon that opinion, nor is his claim precluded by the Supreme Court's reversal of that decision. The court finds that the facts of this case are distinguishable from *Chappell,* and although the Supreme Court has now substantially limited the availability of a *Bivens* action in cases to which the *Feres* doctrine may be applicable, the Court has not totally barred *Bivens* actions by servicemen for torts committed against them during their term of service.

## III

In *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), five enlisted men serving aboard a combat naval vessel brought a *Bivens* action against their commanding officer and various other superior officers. The complaint alleged that because of their minority race, the defendants failed to assign them desirable duties, threatened them, gave them low performance evaluations, and imposed penalties of unusual severity. For these transgressions, the plaintiffs sought damages, declaratory judgment, and injunctive relief.

The United States District Court for the Southern District of California dismissed plaintiff's complaint, holding that the actions complained of were nonreviewable military decisions, that the naval officers were entitled to immunity, and that the enlisted men had failed to exhaust their administrative remedies.

The United States Court of Appeals for the Ninth Circuit reversed, holding that the naval practices complained of were reviewable, and that the officers in question enjoyed only qualified immunity from suit. *Wallace v. Chappell,* 661 F.2d 729 (9th

---

6. *See, e.g., Lombard v. United States,* 690 F.2d 215, 227 (D.C.Cir.1982); *Laswell v. Brown,* 683 F.2d 261, 268–69 (8th Cir.1982); *Norton v. United States,* 581 F.2d 390, 393–94 (4th Cir.), *cert.* denied, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978); *Duarte v. United States,* 532 F.2d 850, 852 (2d Cir.1976).

Cir.1981). The court of appeals concluded that the *Feres* doctrine does not bar a *Bivens* action and, therefore, enlisted men could bring a constitutional claim against the naval officers involved. *Id.* at 735–36 & n. 9.

The Supreme Court of the United States sided with the district court and reversed the appellate court's decision. The Court found that the *Feres* doctrine's underlying policy of protecting military discipline constituted a "special factor" that precluded a *Bivens* action. —— U.S. at ——, 103 S.Ct. at 2367. In a sweeping concluding statement, the Court held that "enlisted military personnel may not maintain a suit to recover damages from a superior for alleged constitutional violations." *Id.* at ——, 103 S.Ct. at 2368. Significantly, however, the Chief Justice limited the scope of the Court's decision, declaring that "[t]his Court has never held, *nor do we now hold,* that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." *Id.* at ——, 103 S.Ct. at 2367 (emphasis added).

 The obvious import of the Court's qualified holding is to limit the *Chappell* decision to its facts. Because the Supreme Court explicitly refrained from precluding all civil actions by military personnel for constitutional wrongs committed during their service, and because the Court found it necessary to determine whether there were special factors present in the facts of *Chappell* which militated against finding a *Bivens* cause of action, this court concludes that the Supreme Court's blanket statement stripping military personnel of their right to maintain an action against superior officers bars only those actions in which the same "special factors" are present, i.e., a case in which a member of the military brings a suit against a superior officer for wrongs which involve direct orders in the performance of military duty and the discipline and order necessary thereto.

**A**

The first exception to a *Bivens* action is the existence of "special factors counselling hesitation." The *Chappell* Court considered the need for military discipline to be just such a "special factor." Traditionally, courts have not interferred with intramilitary disputes because they lack the requisite competency and because such intermeddling would threaten the legitimacy of military orders. —— U.S. at —— – ——, 103 S.Ct. at 2365–67. The Supreme Court noted the "peculiar and special relationship" of the soldier to his superiors and observed that the rights of military personnel must give way to the overriding demands of discipline and duty. *Id.* at ——, 103 S.Ct. at 2365. The Court explained that this is not only true in a combat situation, but also true in the training that precedes combat, so that immediate obedience to military procedures and orders can become so ingrained that it becomes reflexive. *Id.* Thus, it comes as no surprise that the *Chappell* Court refused to allow the enlisted men to recover damages from their superior officers for alleged constitutional violations, because the acts complained of occurred during the course and performance of the plaintiffs' duties as military personnel.

This court is well aware of the compelling need to protect military discipline in order to ensure the execution of military orders. However, the plaintiff's *Bivens* action in the instant case neither involves nor threatens to compromise military discipline. The case does not involve a combat or combat-training situation; it does not involve any exigent circumstances; and it is not a case in which the plaintiff was either ordered or obligated to participate in a military exercise. Rather, this is a case in which the Army sought volunteers to test equipment, and the plaintiff volunteered his participation, in service to his country.[7]

---

7. In a prior decision in the instant case, *Stanley I,* 639 F.2d 1146 (5th Cir.1981), the Fifth Circuit attempted to minimize the significance of Mr.

Stanley's volunteer status by citing fifteen cases in which courts dismissed a serviceman's action against the Government or individuals although

Had civilians been eligible to participate in the program, this case could easily have involved a person not a member of the military. In sum, applying the *Chappell* Court's own standard, this is not a case involving "[t]he special nature of military life, [or] the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel . . . ." —— U.S. at ——, 103 S.Ct. at 2367.

The factual posture of the instant case clearly distinguishes it from several other appellate decisions which have reached a different result. The two most notable are *Gaspard v. United States,* 544 F.Supp. 55 (E.D.La.1982), *aff'd,* 713 F.2d 1097 (5th Cir. 1983), and *Jaffee v. United States,* 663 F.2d 1226 (3d Cir.1981).[8]

*Gaspard* and *Jaffee* are basically identical in factual design and result. In both cases, former servicemen and their wives sued the United States and various named and unnamed federal officers for violating their constitutional rights. Specifically, the plaintiffs alleged that during the Army's atomic testing in the 1950's, their superior officers knowingly *ordered* them to purposely expose themselves to atomic fall-out.[9] Years later, the plaintiffs suffered a host of medical maladies, most of which they attributed to the in-service radiation exposures. The plaintiffs' *Bivens* claims soon followed.

Both the Fifth and Third Circuits dismissed the *Bivens* actions, holding that money damages may not be assessed against the military or its officers if the suit jeopardized military discipline and if there existed an exclusive statutory remedy. Essentially, the courts found that under the specific facts alleged, the rationale of the *Feres* doctrine barred the *Bivens* claims.[10]

The result in *Gaspard* and *Jaffee* is understandable because the soldiers there "were on active duty status at the time of

---

he was volunteering for the activity which caused his injury. This court has reviewed each of the fifteen cases cited by the Fifth Circuit in support of this holding, *id.* at 1150, and finds that they are distinguishable from the case at bar. In almost every case, the plaintiff has sued the Government under the Federal Tort Claims Act, which this court finds distinguishable from a constitutional cause of action brought against individuals pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See infra* notes 18–26 and accompanying text. In the few cases in which the plaintiff did bring an action against individuals for violation of his constitutional rights, the actions were either based on the FTCA, *Uptegrove v. United States,* 600 F.2d 1248 (9th Cir.1979), dismissed for lack of personal jurisdiction without further analysis, *id.,* concerned with military discipline in a different context, *Schmid v. Rumsfeld,* 481 F.Supp. 19, 21 (N.D.Cal.1979) (relying on *Bailey v. Van Buskirk,* 345 F.2d 298 (9th Cir.1965), *cert. denied,* 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966)), or failed to consider the *Bivens* decision, *Haas v. United States,* 518 F.2d 1138 (4th Cir.1975).

8. The *Gaspard* and *Jaffee* decisions, as products of the Fifth and Third Circuits, respectively, are neither binding nor controlling precedent on this court or the Eleventh Circuit. *See Hill v. Linahan,* 697 F.2d 1032, 1034 (11th Cir.1983); *United States v. Butera,* 677 F.2d 1376, 1384 n. 6 (11th Cir.1982); Baker, *Primer on Precedent,* 34

Mercer L.Rev. 1175, 1185–89 (1983). As a case of first impression, *Stanley* offers the Eleventh Circuit an opportunity to define more clearly the interplay between the *Bivens* action and the *Feres* doctrine, and to demonstrate how underlying factual variations in the *Bivens* claim produce different results.

9. *Gaspard,* 713 F.2d at 1099 ("The troops at Desert Rock [including Mr. Gaspard] typically were ordered into open trenches shortly before each atomic blast. After the initial shock waves passed, they were ordered to march within 1,000 yards of 'ground zero.' "); *Jaffee,* 663 F.2d at 1229 (The plaintiff and others "were ordered by their commanding officers to stand in a field without benefit of any protection against radiation while a nuclear device was exploded a short distance away.")

10. After *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), there can be little doubt that the impact of the *Feres* doctrine on a *Bivens* action is fact-specific. Indeed, the *Gaspard* court acknowledged that "[i]t is 'crystal clear' that *Bivens* claims are distinct from FTCA actions, and the *Feres* bar therefore does not automatically preclude the *Bivens* claim." 713 F.2d at 1102 (citations and footnote omitted); *see infra* notes 18–26 and accompanying text. Only because of the nature of the facts presented in *Gaspard* did the court of appeals decide that the *Feres* doctrine barred the plaintiffs *Bivens* claims. *Id.* at 1103.

[the atomic testing], in uniform, *and subject to military orders and discipline."* *Gaspard,* 713 F.2d at 1099 (emphasis added).[11] Significantly, however, the plaintiff in the instant case did not participate in the Army's testing program because a superior officer ordered him to do so; instead—to reiterate—he volunteered. Unlike the soldiers in *Gaspard* and *Jaffe,* who could have left the atomic testing site only upon penalty of insubordination, Mr. Stanley could have freely withdrawn from the Army's LSD experiments. In no way, then, does the instant case require the court to inquire into the propriety of military orders. Therefore, the single most compelling reason for extending the *Feres* doctrine to *Bivens* claims against military officers, and the basis for the *Chappell* decision, is not controlling in the case at bar.

Even if military discipline was somehow tangentially affected by this court's decision, there exists ample common-law and statutory authority to support judicial review of the plaintiff Stanley's constitutional claim. First, complaints by military personnel, which are encouraged by the Uniform Code of Military Justice, 10 U.S.C.A. § 938 (1975),[12] are judicially reviewable.[13] Second, military officials have traditionally been held accountable in courts of law,[14] and this practice continues today.[15] Third,

**11.** In one passage, the *Gaspard* court explained that the *Feres* doctrine would bar a *Bivens* claim if the action would "obstruct *necessary* military orders." 713 F.2d at 1103 n. 12 (emphasis added).

**12.** Article 138, 10 U.S.C.A. § 938, provides:

Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made.

**13.** *Colson v. Bradley,* 477 F.2d 639 (8th Cir.1973) (court stayed officer's discharge and granted mandamus relief to afford him review of his low efficiency report); *Smith v. Resor,* 406 F.2d 141, 145 (2d Cir.1969) ("Our reluctance ... to review discretionary military orders does not imply that any action by the Army, even one violative of its own regulations, is beyond the reach of the courts."); *Cushing v. Tetter,* 478 F.Supp. 960 (D.R.I.1979) (naval enlistee properly failed to resort to remedies under Uniform Code of Military Justice before seeking federal judicial relief from order that he return to military unit); *Hickey v. Commandant of Fourth Naval Dist.,* 461 F.Supp. 1085 (E.D.Pa.1978) (naval reservist entitled to judicial review of Secretary's order calling reservist to active duty upon his disenrollment from Naval ROTC).

Judicial decisions over the last quarter century demonstrate that there is no broad barrier to judicial review of military matters. For example, the federal courts have greatly expanded their review of military court-martial proceedings. *See Schlesinger v. Councilman,* 420 U.S. 738, 745, 95 S.Ct. 1300, 1306, 43 L.Ed.2d 591 (1975); *Harmon v. Brucker,* 355 U.S. 579, 582, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958); *Scott v.* *Schlesinger,* 498 F.2d 1093 (5th Cir.1974); *Gibbs v. Blackwell,* 354 F.2d 469 (5th Cir.1965). The courts also have reviewed the military's decision to grant or deny inductees conscientious objector status. *See United States ex rel. Donham v. Resor,* 436 F.2d 751 (2d Cir.1971); *United States ex rel. Martinez v. Laird,* 327 F.Supp. 711 (N.D. Fla.1971). Most significantly, federal courts are not adverse to reviewing internal military affairs, *see Harmon v. Brucker,* 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) (discharge); *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971) (demotion), or examining the constitutionality of military decisions or regulations, *see Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (freedom of speech); *Burns v. Wilson,* 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953) (due process); *Hatheway v. Secretary of Army,* 641 F.2d 1376 (10th Cir.), *cert. denied,* 454 U.S. 864, 102 S.Ct. 324, 70 L.Ed.2d 164 (1981) (due process and equal protection); *Priest v. Secretary of Navy,* 570 F.2d 1013 (D.C. Cir.1977) (freedom of speech); *Betonie v. Sizemore,* 496 F.2d 1001 (5th Cir.1974) (right to counsel); *United States v. Flower,* 452 F.2d 80 (5th Cir.1971) (freedom of speech).

**14.** *See Dinsman v. Wilkes,* 53 U.S. (12 How.) 389, 13 L.Ed. 1036 (1851) (marine can sue his commanding officer for alleged unconstitutional cruel and unusual punishment); *Little v. Barreme,* 6 U.S. (2 Cranch) 170, 2 L.Ed. 243 (1804) (commander of U.S. warship liable for damages for unlawful seizure of neutral vessel even though acting on orders of President).

**15.** *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (habeas corpus review of court martial); *Parisi v. Davidson,* 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972) (serviceman who had applied for discharge as conscientious objector and had exhausted administrative remedies was entitled to seek habeas corpus relief in federal court); *O'Callahan v.*

military officers are subject to only qualified immunity,[16] albeit this immunity is granted if military discipline would be deleteriously affected by judicial interference. *See Chappell,* —— U.S. at ——, 103 S.Ct. at 2365–66.

In conclusion, by donning a uniform, a member of the Army does not volunteer himself to be duped and deceived into becoming a guinea pig for his superiors, and consequently to be deprived of his most fundamental constitutional and human rights. The "peculiar and special relationship of the soldier to his superiors" does not permit the violation of those fundamental rights in a situation that does not involve military discipline and duty. Furthermore, although the special status of the military has required the establishment of two systems of justice, one for civilians and the other for military personnel, both must operate within the confines of the Constitution and the Bill of Rights. As explained in *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979), a case almost identical to the one at bar: [17]

> To hold that the military may deprive a civilian of his constitutional rights merely because the deprivation originated when the civilian was an enlisted man would be tantamount to declaring all veterans second class citizens. Men and women who have served in our Armed Forces, and to whom this nation is indebted beyond measurement, are certain-

ly entitled to the constitutional liberties afforded all citizens. In short, if the military deprives a veteran of his constitutional rights, it may not look to *Feres* for immunity.

*Id.* at 353 (footnote omitted).

**B**

The *Chappell* Court, by its own admission,[18] relies on the *Feres* doctrine policy of protecting military discipline to bar a *Bivens* action. Although a small portion of the opinion intimates that the Court is sensitive to the difference between a statutory and a constitutional cause of action,[19] the decision's overall analysis appears to belie this view. Statutory and constitutional actions implicate different immunity concepts, which can sharply alter the complexion of a court's analysis. A *Bivens* claim raises questions about official immunity, while the principle of sovereign immunity often dictates the result of actions brought under the Federal Tort Claims Act. This court does not interpret *Chappell* as holding that the law and policy circumscribing statutory actions are controlling herein. Rather, the FTCA, and more specifically the *Feres* doctrine, merely influence this court's analysis of plaintiff's constitutional claim. To ensure that its position on this important point is clear, the court pauses at this juncture to examine the relationship

*Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) (review and reversal of lower courts denial of habeas corpus relief for soldier charged with nonservice connected wrongdoing); see cases cited *supra* note 13.

**16.** *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (Governor, *senior and subordinate officers of state National Guard,* and state university president not absolutely immune from suit for damages under 42 U.S.C. § 1983 for military steps taken in alleged suppression of student dissent over Vietnam War); *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979) (high ranking military officials who were charged with violating serviceman's fifth amendment rights held not immune from suit); *infra* note 26 and accompanying text.

**17.** Plaintiff Thornwell was a former serviceman who sued the United States and his former mili-

tary superiors for injuries which he sustained after the Army intentionally administrated LSD to him without his knowledge as part of their interrogation. The plaintiff charged, *inter alia,* that the federal officers violated his fifth amendment due process rights by concealing the drugging and failing to provide him with follow-up medical treatment. As to this count, the United States District Court for the District of Columbia held that the plaintiff's allegations stated a valid *Bivens* -type cause of action. 471 F.Supp. at 355.

**18.** "... the Court's analysis in *Feres* guides our analysis of this case." —— U.S. at ——, 103 S.Ct. at 2365.

**19.** "[*Chappell*] concerns the limitations on the type of nonstatutory damage recognized in *Bivens,* rather than Congress' intent in enacting the Federal Tort Claims Act ..." *Id.*

between the *Feres* doctrine and the *Bivens* cause of action.

The *Feres* doctrine represents a judicial response to Congress' passage of the FTCA. The doctrine prevents members of the armed forces from suing the United States for injuries suffered incident to, or arising out of, military service. There *Feres* Court cited several reasons for the doctrine, some of which remain persuasive today. First, the "distinctively federal" nature of the relationship between soldiers and the government means that military personnel should not be subject to variations in state law when seeking relief.[20] Second, claims against the government are unnecessary because there already exists a comprehensive system for compensating military personnel under the Veterans Benefits Act, 38 U.S.C. § 301 et seq. (1976).[21] Third, suits against the government are barred because of the need for military discipline, which is fostered by preventing a soldier from questioning the legitimacy and propriety of an order.[22]

Completely distinguishable from a statutory action against the military barred by *Feres* is a constitutional cause of action based on *Bivens.* The source of a *Bivens* action is the Constitution; the rights protected therein are among the most valued personal liberties that citizens possess. Indeed, the Supreme Court has long recognized that a citizen has a right to relief when his constitutional rights are violated. As Chief Justice John Marshall observed in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803), "[t]he very essence of civil liberty certainly consists of the right of every individual to claim the protection of the laws." The *Bivens* Court logically extended this principle to include a citizen's right to sue federal officers for alleged violations of the former's constitutional rights. 403 U.S. at 397, 91 S.Ct. at 2005. The federal courts have the power to award damages to a litigant in a *Bivens* claim absent congressional authorization,[23] and such actions can be implied under the Fifth Amendment.[24]

---

**20.** *Feres,* 340 U.S. at 143, 71 S.Ct. at 158.

**21.** 340 U.S. at 145, 71 S.Ct. at 159. *But cf. United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). In *Brown,* the Court found that the availability of relief under the Veterans Act, ch. 102, § 31, 48 Stat. 526 (1934) (current version at 38 U.S.C.A. § 351 (1979)), did not preclude recovery against the Government under the FTCA, too. 348 U.S. at 113, 75 S.Ct. at 144 (reaffirming *Brooks v. United States,* 337 U.S. 49, 53, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949)).

**22.** *See, e.g., Stencel Aero Eng'g Corp. v. United States,* 431 U.S. 666, 673, 97 S.Ct. 2054, 2058–59, 52 L.Ed.2d 665 (1977).

**23.** *Bivens,* 403 U.S. at 397, 91 S.Ct. at 2005. The plain and obvious language of post-*Bivens* Supreme Court decisions easily dispenses with the *Chappell* Court's undocumented assertion that federal courts lack the authority to provide damage remedies for constitutional violations in the absence of congressional approval. —— U.S. at ——, 103 S.Ct. at 2367. For example, in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), a case involving the scope of immunity afforded federal executive officers, Justice White counselled:

> The presence or absence of congressional authorization for suits against federal officials is, of course, relevant to the question whether

to infer a right of action for damages for a particular violation of the Constitution.... Absent congressional authorization, a court may also be impelled to think more carefully about whether the type of injury sustained by the plaintiff is normally compensable in damages, and whether the courts are qualified to handle the types of questions raised by the plaintiff's claim.

But once this analysis is completed, there is no reason to return again to the absence of congressional authorization in resolving the question of immunity.

*Id.* at 503, 98 S.Ct. at 2909 *(citations omitted).* Lest there be any doubt that the federal courts can authorize a *Bivens* remedy when faced with congressional silence, the court urges review of Justice Harlan's concurrence in *Bivens,* 403 U.S. at 398, 91 S.Ct. at 2005; *see James v. United States,* 358 F.Supp. 1381, 1386–87 (D.R.I.1973).

**24.** *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (action against congressman for sex discrimination); *Thornwell v. United States,* 471 F.Supp. 344, 353–55 (D.D.C.1979) (military surreptitiously administered LSD to soldier in violation of his fifth amendment rights); *see also Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (eighth amendment).

In *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), which involved a claim by a mother on behalf of her deceased son against federal prison officials who were alleged to have intentionally deprived him of necessary medical care, the Supreme Court recognized another important difference between the *Bivens* and FTCA actions: the constitutional remedy is more effective. The Court adduced four reasons for this conclusion:

First, the *Bivens* remedy, in addition to compensating victims, serves a deterrent purpose. Because the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States.

. . . . .

Second, our decisions ... indicate that punitive damages may be awarded in a *Bivens* suit.... But punitive damages in an FTCA suit are statutorily prohibited. 28 U.S.C. § 2674. Thus FTCA is that much less effective than a *Bivens* action as a deterrent to unconstitutional acts.

Third, a plaintiff cannot opt for a jury in an FTCA action, 28 U.S.C. § 2402, as he may in a *Bivens* suit....

Fourth, an action under FTCA exists only if the state in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward. 28 U.S.C. § 1346(b). Yet it is obvious that the liability of federal officials for violations of citizen's constitutional rights should be governed by uniform rules.

*Carlson*, 446 U.S. at 21–23, 100 S.Ct. at 1472–74. Rather than allow federal officials to act beyond the scope of their authority with impunity, the *Bivens* action checks the exercise of that power and serves as "an important means of vindicating constitutional guarantees." *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978).[25] Because of these differences, the *Bivens* and FTCA actions are distinguishable.

Extending the *Feres* analysis to a *Bivens* claim blurs the distinction between statutory and constitutional actions. Without delineating between the two, a court might grant *official* immunity to officers in the military based on reasoning that heretofore has sustained only federal *sovereign* immunity. While sovereign immunity has constitutional underpinnings and is as absolute as Congress may intend, official immunity is judge-made and generally is qualified.[26]

**25.** Courts critical of the *Bivens* remedy charge that the deterrent value of the action has a "chilling effect" on the exercise of discretionary power by government officials and, therefore, the constitutional action hinders not only improper conduct, but proper conduct, too. *See Jaffee v. United States*, 663 F.2d 1226, 1234 (3d Cir.1981). Although this criticism has merit in a military setting in which orders must be obeyed reflexively, it has no application where, as here, military discipline is not involved. Instead, the instant case presents a rather straightforward question of whether fundamental constitutional rights take precedence over government discretionary power. This court answers in the affirmative.

Admittedly, in order for government to function properly, its officials must be free to exercise discretionary authority. However, the Framers of the Constitution recognized that discretionary authority left uncontrolled can become oppressive, so they drafted the Bill of Rights to check government power and protect individual liberties. L. Tribe, American Constitutional Law § 1–2, at 3 n. 7 (1978) (relying on 14 The Papers of Thomas Jefferson 659 (J. Boyd

ed. 1958)). The presumption born of the first ten amendments is that government conduct violative of an individual's constitutionally-protected rights is invalid. Translated into practical terms, this means that in a military setting in which discipline is not relevant, government officers cannot secretly administer drugs to members of the armed forces in violation of their constitutional rights. If the *Bivens* action has a "chilling effect" on this type of individual conduct, then so be it. After all, no less an authority than the Bill of Rights requires such a result.

**26.** Virtually every federal or state officer is subject to qualified immunity. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (Secretary and Assistant Secretary of Agriculture); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (state non-judicial officials); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (governor and officers in National Guard). Although qualified immunity is the rule, the Supreme Court has recognized that there are some officials whose special functions require a full exemp-

In order to avoid obscuring the concepts of sovereign and official immunity, *Chappell* counsels that the *Feres* doctrine "guides," but does not dictate, the outcome of a *Bivens* action arising out of an intramilitary dispute. The Court reasons that if the *Feres* doctrine applies, then military officers may be subject to qualified immunity from suit. As explained above, however, the *Feres* doctrine is not controlling in the instant case because the discipline of military subordinates is in no way implicated by the facts. Thus, in holding that the plaintiff's *Bivens* action is viable, this court is faithful to the rule in *Chappell* while remaining sensitive to the distinction between a statutory and a constitutional cause of action.

### C

█ Under the *Bivens* analysis, the implication of a constitutional cause of action also may be precluded when Congress has explicitly provided an adequate alternative remedy. The *Chappell* Court devotes little space to this issue; in fact, nowhere in the opinion does the Court even mention this second exception to a *Bivens* action. The Court does point out, however, that military personnel can bring their complaints before a military tribunal, and that such bodies can award retroactive back pay and promotions. *Chappell*, —— U.S. at ——, 103 S.Ct. at 2367.

Such remedies are meaningless in the instant case. The constitutional wrong complained of by Mr. Stanley is impossible to correct. The plaintiff does not claim that the Army cheated him out of either money or a promotion. Rather, he alleges that the Army has knowingly deprived him of the ability to appreciate and enjoy his life; that for the past twenty-five years, he has suffered—and continues to suffer—from serious mental illness and severe physical pain. Amended Complaint ¶¶ 5, 8 (filed Apr. 29, 1981).

Having differentiated between the alternative remedies available in *Chappell* and the instant case, the court would be content to stop here. However, the need for clarity in this case compels the court to explain in greater detail why no alternative remedies exist that would preclude the plaintiff's *Bivens* action.

█ There are two, mutually dependent, elements to the alternative remedy exception. The first element requires proof that Congress has provided an alternative remedy which it *explicitly* declared to be a substitute for recovery under the Constitution. *Bivens*, 403 U.S. at 397, 91 S.Ct. at 2005; *see Carlson v. Green*, 446 U.S. 14, 19–20, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980); *Davis v. Passman*, 442 U.S. 228, 246–47, 99 S.Ct. 2264, 2278, 60 L.Ed.2d 846 (1979). An essential aspect of this element is that Congress must expressly intend for the alternative remedy to replace, rather than to complement, the *Bivens* remedy. *Carlson*, 446 U.S. at 19 n. 5, 100 S.Ct. at 1472 n. 5. The second independent requirement for this exception to apply is that the remedial scheme must be *equally as effective* as the damages action. *Id.* at 18–19, 100 S.Ct. at 1471–72.

█ The only alternative remedy that satisfies the first element of the exception is the Veterans Benefits Act, 38 U.S.C. § 301 et seq. (1976) ("VBA"). Although the Third and Fifth Circuits have concluded that the VBA preempts a private action against the military for damages based on the Constitution, *see Gaspard v. United States*, 713 F.2d 1097 (5th Cir.1983); *Jaffee v. United States*, 663 F.2d 1226, 1245–46 (3d Cir.1981), neither of these decisions applied the *Bivens/Carlson* analysis.

The *Jaffee* court fundamentally modified the alternative remedy test by not requiring "an explicit Congressional declaration of the exclusivity of veterans' compensation." 663 F.2d at 1243. In *Gaspard*, the court ignored the *Bivens/Carlson* stan-

tion from liability. *See Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (state prosecutor); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (state judge); *Yaselli v. Goff*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), *aff'g* 12 F.2d 396 (2d Cir.1926) (federal prosecutor); *Bradley v. Fisher*, 13 Wall 335, 20 L.Ed. 646 (1872) (federal judge).

dard altogether. While the Fifth Circuit found the VBA to be an "exclusive" and "comprehensive" remedy, 713 F.2d at 1102, 1105, no consideration was given, as *Carlson* requires, to whether the statutory claim is "as effective" a remedy as the *Bivens* action itself. Moreover, the *Gaspard* court did not find, as *Bivens* requires, that Congress had "explicitly declared" the VBA to be an exclusive remedy.[27] This court is not prepared to alter so radically the standard established in *Bivens* and reaffirmed in *Carlson,* especially since the *Chappell* Court was presented with the issue and basically elected to ignore it.[28]

Admittedly, the legislative history of the VBA indicates that Congress has assumed some responsibility for insuring adequate compensation for service-related injuries, S.Rep. No. 94–1226, 94th Cong., 2d Sess. 10, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2537, 2541. Yet nowhere in the legislative history or the statutory language of the VBA itself does the Congress "explicitly declare" that the VBA is to replace a money damages action.[29] This is particularly significant because Congress follows the practice of expressly stating when it intends to make a legislative remedy exclusive. See 10 U.S.C.A. § 1089(a) (1983); 38 U.S.C.A. § 4116(a) (1979); 42 U.S.C.A. § 233(a) (1982); 42 U.S.C.A. § 2458a (West Supp.1983).[30] None of the decisions which have found the VBA to be an exclusive remedy for servicemen seeking compensation for injuries sustained while in the military have reconciled their result with this congressional practice. *See Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 464, 100 S.Ct. 647, 650, 62 L.Ed.2d 614 (1980) (relying on *Stencel Aero Engineering Co. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977)); *Gaspard v. United States,* 713 F.2d 1097 (5th Cir.1983); *Scales v. United States,* 685 F.2d 970 (5th Cir. 1982), *cert. denied,* ── U.S. ──, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983); *Jaffee v. United States,* 663 F.2d 1226 (3d Cir.1981); *Carter v. City of Cheyenne,* 649 F.2d 827 (10th Cir.1981). *But see supra* note 21. Furthermore, cases such as *Stencel, Scales,* and *Carter* are distinguishable

---

**27.** The Fifth Circuit has not hesitated to apply the "explicit declaration" standard in the past. For example, in *Garcia v. United States,* 666 F.2d 960 (5th Cir.1982), the court observed that "a *Bivens* action may ... be defeated ... when defendants show that Congress has provided an equally effective alternative remedy which it *explicitly* declared to be a substitute for recovery directly under the Constitution." *Id.* at 965 (emphasis added).

**28.** In a case decided the same day as *Chappell, Bush v. Lucas,* ── U.S. ──, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court was confronted with a *Bivens* claim brought by a federal civilian employee against his supervisor. Unlike *Chappell,* the *Lucas* Court reviewed the *Bivens/Carlson* test and, significantly, left the "explicit declaration" standard intact. ── U.S. at ──, 103 S.Ct. at 2411.

**29.** *Lucas* provides an insight into the type of legislative history and statutory language that is necessary to warrant a finding that a congressionally-imposed remedial scheme is to be an exclusive remedy. The issue before the Court in *Lucas* was what legal remedies are available to a government civil servant who is the victim of a retaliatory demotion or discharge because he has exercised his first amendment rights. The Court posited that for a congressional remedy to be the sole source of relief, the Congress must so indicate "by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself...." ── U.S. at ──, 103 S.Ct. at 2411. In light of the "elaborate remedial system" enacted by Congress to handle challenges to agency personnel decisions, *id.* 103 S.Ct. at 2416, the Court concluded that Congress, and not the federal courts, is better equipped to prescribe the scope of relief that is made available to federal employees whose constitutional rights have been violated by their supervisors. Pursuant to the guidelines announced in *Lucas,* this court has reviewed the legislative history and statutory language of the VBA, and finds that neither clearly indicates that Congress intended for the compensation scheme therein to be an exclusive remedy. At most, Congress intended for the VBA "to provide relief for the impaired earning capacity of veterans disabled as a result of their military service," S.Rep. No. 94–1226, 94th Cong., 2d Sess. 39, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2537, 2565, leaving it to the courts to fashion a remedy that would encourage individual accountability.

**30.** In each of the legislative sections cited, the Congress has declared that the remedies therein "shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter...."

from the instant case because they involved statutory actions against the Government, and not constitutional actions against federal officers.

In a statutory claim against the Government, the legislature has created the action and, appropriately enough, delineates the available remedies. The remedies are declared exclusive as the necessary tradeoff for making the sovereign liable for wrongdoing. Thus, an injured serviceman suing the Government under the FTCA is assured a "swift, efficient remedy," and the Government itself basically remains protected from unlimited liability by the Act's limitation-of-liability provisions. *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2058 (quoting *Cooper Stevedoring Co. v. Kopke, Inc.,* 417 U.S. 106, 115, 94 S.Ct. 2174, 2179, 40 L.Ed.2d 694 (1974)).

Legislative relief is neither an exclusive nor an adequate means of compensating a person whose constitutional rights were violated by federal officers. To begin with, a *Bivens* action does not threaten to expose the Government to broad liability because a federal officer, and not the Government, is the party charged with wrongdoing. Additionally, the *Bivens* cause of action seeks to hold a federal officer accountable for his actions, *supra* pp. 483–484, while the statutory action in *Stencel* and similar cases is designed to insure "simple, certain, and uniform compensation." *Jaffee v. United States,* 663 F.2d 1226, 1232 (3d Cir.1981) (interpreting the VBA and quoting from *Feres*). In fact, the Supreme

Court has recognized that the VBA is nothing more than a no-fault compensation scheme that substitutes for tort liability. *Stencel,* 431 U.S. at 672, 97 S.Ct. at 2058; *see Lombard v. United States,* 690 F.2d 215, 219 (D.C.Cir.1982). In short, the VBA should be viewed as fully adequate only in combination with the *Bivens* remedy.

Other reasons suggest that the VBA does not pass judicial scrutiny under the *Bivens/Carlson* standard. Initially, even after passage of the VBA, money damages could still be recovered under state tort law for intentional and negligent torts. If the VBA was to be meant as an exclusive remedy, then why did not Congress close this legal loophole? Furthermore, given the plethora of suits involving servicemen seeking judicial review of their intramilitary disputes,[31] why has Congress neither clarified the status of nor expressly barred money damages claims when confronted with this issue?[32]

Even if the VBA is deemed to be an alternative remedy which Congress has explicitly declared to be a substitute for recovery under the Constitution, this court finds that it is not "an *equally* effective remedial scheme." *Carlson,* 446 U.S. at 22 n. 10, 100 S.Ct. 1468 n. 10. An alternative remedy, to be equally effective in this case, must accomplish two objectives: it must make the complainant whole and deter future such abuses of power.[33] The court remains uncertain whether the Veterans Administration's (VA) system of benefits is

---

**31.** Examples include suits over atomic testing, *see Jaffee v. United States,* 592 F.2d 712 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979); *Gaspard v. United States,* 544 F.Supp. 55 (E.D.La.1982), *aff'd,* 713 F.2d 1097 (5th Cir.1983), and the Army's spraying of the herbicide Agent Orange in Vietnam, *see In re "Agent Orange" Product Liability Litigation,* 506 F.Supp. 762 (E.D.N.Y.), *rev'd,* 635 F.2d 987 (2d Cir.1980), *cert. denied sub nom., Chapman v. Dow Chemical Co.,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). One article surveying the subject area reports that "[p]resently, there are more than one thousand pending lawsuits alleging constitutional violations." Madden, Allard, & Remes, *Bedtime for* Bivens: *Substituting the United States as Defendant in Constitutional Tort Suits,* 20 Harv.J. on Legis. 469, 473 (1983)

(footnote omitted) [hereinafter cited as *Bedtime for* Bivens].

**32.** If Congress wanted to make veterans' benefits an exclusive remedy, then it could so state in at least one annual appropriation bill that funds the VBA. Like its predecessors, the Ninety-eighth Congress has taken up the question of whether sovereign immunity should bar a constitutional tort claim against military officials. And, like its predecessors, final, if any, action on the proposed bills will not occur during this session. For an account of this legislative activity, see *Bedtime for* Bivens, *supra* note 31 at 475–77.

**33.** *See id.* at 475 & n. 19.

equipped to satisfy the plaintiff's demand for relief. Additionally, shifting the responsibility for compensating Mr. Stanley from the federal officers involved to the VA has little deterrent value to the individuals, and all but declares that military officers can violate the most basic of our constitutional rights with impunity.

## IV

After lengthy analysis, the court concludes that the Supreme Court's decision in *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), is inapposite, and that the plaintiff has a viable *Bivens*-type cause of action against individual agents and officers of the United States who participated in the LSD experiments.

By way of review, the overbroad statements in *Chappell* must be read in the context of the facts and analysis of the opinion. A careful examination of *Chappell* proves that, at most, the Supreme Court has decided to bar *Bivens* actions brought by servicemen against their superiors if the alleged wrongdoing occurred during active duty and was incident to the execution of military orders. Couched in these terms, the holding in the case at bar displays the proper deference to *Chappell*, yet preserves the sworn duty of this court to be heard when the Government's egregious behavior violates the law by victimizing the very people that it asks to defend it.

Constitutional law scholar Archibald Cox has written that for the law to have true authority and precedential value, it must "meet the needs of men and match their ethical sensibilities." A. Cox, The Role of the Supreme Court in American Government 110 (1976). As has been demonstrated, any decision by this court strictly and literally applying the holding of *Chappell* to the instant case, of necessity, would crumble under the weight of legal and moral scrutiny. This court has seen few cases which more desperately cry out for and demand judicial redress. The acts alleged to have been committed by the officers and agents named as defendants in this case are insidious to the most fundamental rights protected by our Constitution: the right of an individual to control his mind, his private thoughts, and his bodily integrity. To deny Mr. Stanley a judicial forum is to strip the court of its most important function—to ensure that the plaintiff is accorded justice under the law.

This court reiterates the words of Chief Justice Earl Warren, as quoted in the *Chappell* decision: " 'our citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes.' " —— U.S. at ——, 103 S.Ct. at 2367 (citing Warren, *The Bill of Rights and the Military,* 37 N.Y.U.L.Rev. 181, 188 (1962)). Accordingly, this court, having found that the special factors existing in *Chappell* are not applicable to this case, and that no special factors exist dictating against a *Bivens*-type action, refuses to conclude that the *Chappell* decision precludes a *Bivens*-type cause of action by the plaintiff Stanley.

The prior order herein denying in part the defendants' motion to dismiss is hereby ratified and confirmed.